IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| LILLIE C. BURROUGHS,         ] | |
| ] | |
|     Plaintiff,                       ] | |
| v.                                        ] | |
| ] | |
| BRUISTER & ASSOC., INC, et. al.,   ] | CV-09-BE-850-S |
| ] | |
|     Defendants.                   ] | |
| ] | |
| ] | |

## MEMORANDUM OPINION

This matter is before the court on "Defendants Rick Horsley and Mary Hill's Motion to Dismiss Count IV of Third Amended Complaint" (doc. 73). Count IV of the eight-count Third Amended Complaint asserts that these Defendants committed the tort of outrage. This issue has been thoroughly briefed. For the reasons stated in this memorandum opinion, the court finds that the motion to dismiss is due to be GRANTED.

### I. FACTS

The Third Amended Complaint states the following facts relevant to the outrage claim, which the court must accept as true for the purposes of this motion:

Plaintiff, Lillie Burroughs is a fifty-three-year-old African American woman, who was formerly employed with DIRECTV, and Bruister & Associates, Inc., now known as Southeastern Ventures, Inc. ("Southeastern"). At all times material to the claims in Count IV, Defendant Rick Horsley was the Manager of the Bessemer facility of Southeastern and DIRECTV; Defendant Mary Hill was the facility's Assistant Manager; and Derrick Whiteside was the facility's Area

1

Manager.

On or about December 26, 2007, Burroughs heard Hill tell Linda Horsley, who was also employed at the facility: "I can't stand that nigger bitch," referring to Burroughs. Linda Horsley was Defendant Horsley's sister-in-law. Burroughs reported Hill's statement to Whiteside and to Defendant Horsley. In response to Burroughs's report, she alleges that "Defendants" (presumably Whiteside and Southeastern) did not take "effective corrective action." (doc. 67, ¶ 2). After the report, however, Hill began giving Burroughs "bad work assignments" and treated Burroughs in a "rude, insolent, and hostile manner." (doc. 67, ¶ 3). For example, Plaintiff alleges that Hill got in her face and said very loudly: "'Are you refusing to work?' 'Do you hear me?' and 'Are you listening to me?'" Plaintiff alleges that when Hill said these things to her, spit from Hill's mouth hit Burroughs in the face. (doc. 67, ¶ 3).

In December 2007, Burroughs injured her left thumb and hand during the course of her employment. She filled out a Worker's Compensation claim and notice, and her employer sent her to a hospital emergency room for treatment. When Burroughs returned from the emergency room, her employer told her that she would be receiving follow-up care and treatment information. She continued to suffer pain and the loss of use of her left thumb and left hand. On January 17, 2008, "shortly" after her injury[1] and after reporting Hill's statement about her, Burroughs was fired.

With the termination of her employment, Burroughs's health insurance was also terminated. Burroughs returned to ask for information about getting medical care and treatment for her on-the-job injuries, specifically inquiring about the status of her Worker's Compensation

---

[1]The complaint does not give a precise date on which the injury to her thumb occurred.

2

claim and her right to continuing healthcare insurance under COBRA.  In response to her inquiries, Horsley and Hill told her "in a belittling and demeaning manner and tone of voice" that "she had been terminated and  that her employers had no further responsibility for her." (doc. 67, ¶ 9).  They then laughed at her and told her to leave the premises and not return.  Further, "Hill in a very harsh, threatening, and demeaning manner and tone of voice said to Burroughs, 'Do you hear me?'" (doc. 67, ¶ 9). Although Horsley's and Hill's job responsibilities included the filing of Worker's Compensation claims for employees of  Defendants Southeastern and DIRECTV, they "intentionally" failed to file Burroughs's Worker's Compensation claim.

Although Burroughs continues to need additional medical treatment for her left thumb and left hand, she has not received it, and does not have healthcare insurance to cover that treatment.  She claims to have suffered severe emotional distress, humiliation, embarrassment, and fear as a result of the intentional actions of Hill and Horsley.

## II.  STANDARD OF REVIEW

A Rule 12(b)(6) motion to dismiss attacks the legal sufficiency of the complaint. Generally, the Federal Rules of Civil Procedure require only that the complaint provide "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957) (quoting Fed. R. Civ. P. 8(a)).  A plaintiff must provide the grounds of his entitlement, but Rule 8 generally does not require "detailed factual allegations." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley*, 355 U.S. at 47).   It does, however, "demand[ ] more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal* ___ U.S. ___, 129 S. Ct. 1937, 1949 (2009).  Pleadings that contain nothing more than "a formulaic recitation

of the elements of a cause of action" do not meet Rule 8 standards nor do pleadings suffice that are based merely upon "labels or conclusions" or "naked assertions" without supporting factual allegations.  *Twombly*, 550 U.S. at 555, 557.

The Supreme Court explained in *Twombly* that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 129 S. Ct. at 1948 (quoting and explaining its decision in *Twombly*, 550 U.S. at 570).  To be plausible on its face, the claim must contain enough facts that "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949.  Although "[t]he plausibility standard is not akin to a 'probability requirement,'" the complaint must demonstrate "more than a sheer possibility that a defendant has acted unlawfully."  Id.  "Where a complaint pleads facts that are merely consistent with a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"  *Id.*  (quoting *Twombly*, 550 U.S. at 557).

### III.  DISCUSSION

The task in this case is to determine whether the factual allegations of Count IV of the Complaint as to Defendants Horsley and Hill are sufficient "to state a claim to relief that is plausible on its face." *Iqbal*, 129 S. Ct. at 1948.  More precisely, does the complaint state sufficient facts from which the court can draw the reasonable conclusion that Defendants Horsely and Hill committed the tort of outrage as recognized under Alabama law?

To establish a claim for outrageous conduct, a plaintiff must show: (1) intentional or reckless conduct by the defendant (2) that was extreme and outrageous (3) that caused severe emotional distress.  *Soti v. Lowe's Home Ctrs. Inc.*, 906 So. 2d 916, 919 (Ala. 2005).  In

4

recognizing the tort, the Alabama Supreme Court required the plaintiff to establish that the defendant engaged in "conduct so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society." *Am. Road Serv. Co. v. Inmon*, 394 So. 2d 361, 365 (Ala. 1980). Because the tort only applies to egregious cases, the plaintiff's burden is an onerous one. *See Ex parte Crawford & Co.*, 693 So. 2d 458, 459-60 (Ala. 1997).

The parties focus on the Alabama cases applying the tort of outrage in the context of workers' compensation, and then argue that those cases do or do not support a claim here. *E.g.*, *Travelers Indemnity Co. of Ill. v. Griner*, 809 So. 2d 808 (Ala. 2001); *Continental Cas. Ins. Co. v. McDonald*, 567 So. 2d 1208 (Ala. 1990). However, the court finds those cases inapplicable.

Unlike *Griner* and *McDonald*, the Defendants here are not employees of the workers' compensation insurance carrier who used delays and denial of treatment and other tactics to force an unreasonable settlement of the plaintiff's claim. Instead, Defendants Horsley and Hill acted as agents of Burroughs's employer in allegedly thwarting her efforts to file her workers' compensation claim in the first place. If extreme efforts by a workers' compensation carrier to force a settlement of a worker's compensation claim can give rise to liability for outrage, then why would not efforts by the employer's agents to prevent the filing of a workers' compensation claim in the first place also suffice to support an outrage claim? No Alabama court has expanded the application of the tort of outrage into such a context, and this court is reluctant to do so. However, the answer in this case depends on whether the facts alleged in the Complaint rise to the level of "conduct so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized

society," as required by *Inmon*, 394 So. 2d at 365.

In her Third Amended Complaint, Burroughs alleges conduct by Horsely and Hill to support her claim of outrage that is rude, crude, and socially unacceptable. But this boorish conduct does not rise to the level of extreme, atrocious, and utterly intolerable to qualify as egregious. The alleged conduct pales in comparison to the conduct generally associated with the tort of outrage. Therefore the motion to dismiss Count IV is due to be GRANTED.

DONE and ORDERED this 19th day of May 2010.

_____
KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE