# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN  DIVISION

| | |
|---|---|
| **LILLIE C. BURROUGHS,** ] | |
| ] | |
| Plaintiff, ] | |
| v. ] | |
| ] | |
| **BRUISTER & ASSOC., INC, et. al.,** ] | CV-09-BE-850-S |
| ] | |
| Defendants. ] | |
| ] | |

## MEMORANDUM OPINION

This matter is before the court on "Motion for Taxation of Costs against Plaintiff" (doc. 161); "Plaintiff Lillie C. Burroughs' Motion to Alter or Amend Judgment Pursuant to Rule 59(e) of the Federal Rules of Civil Procedure and Motion for Hearing" (doc. 165); and "Plaintiff Lillie C. Burroughs's Supplemental Authority ... and Motion for Hearing" in support of the motion to alter or amend (doc. 169).  The court has carefully reviewed and studied the filings in this case, including the submissions at the summary judgment level, as well as the transcript of the March 1, 2011 motions hearing and the new case law cited.[1]   For the reasons stated in this Memorandum Opinion, the court finds that the Defendants' motion for taxation of costs is due to be GRANTED; and further finds, in its discretion, that Plaintiff's motions are due to be DENIED.

---

[1]The court recognizes that a good deal of time has elapsed since the filing of this motion and regrets the delay.  However, the delay results from not only the court's busy docket but also the court's desire to carefully study the new decisions cited and to review the submissions related both to the Rule 59 and Rule 56 motions.

**I. Motion to Alter or Amend**

Burroughs requests under Rule 59(e) the alteration or amendment of this court's grant of summary judgment in Defendants' favor. "[R]econsideration of an order is an extraordinary remedy and is employed sparingly." *Rueter v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 440 F. Supp. 2d 1256, 1267-8 (N.D.Ala. 2006); *see Templet v. HydroChem, Inc.*, 367 F.3d 473, 479 (5th Cir. 2004) (describing a Rule 59(e) motion as an "extraordinary remedy that should be used sparingly"); *see also Frederick v. Kirby Tankships, Inc.,* 205 F.3d 1277, 1288 (11th Cir. 2000) (stating that federal courts grant reconsideration and relief from judgment under *Rule 60(b)(6)* "only for extraordinary circumstances"). Motions for reconsideration should not be a "'knee-jerk reaction to an adverse ruling.'" *Rueter,* 440 F. Supp. 2d at 1267-8) (quoting *Summit Medical Center of Alabama, Inc. v. Riley,* 284 F. Supp. 2d 1350, 1355 (M. D. Ala. 2003)). A party cannot use a Rule 59(e) motion "to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment." *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 485 n. 5 (2008) (quoting 11 C. Wright & A. Miller, Federal Practice & Procedure § 2810.1, pp. 127-28 (2d ed. 1995)); *see Michael Linet, Inc. v. Village of Wellington, Fla.*, 408 F.3d 757, 763 (11th Cir. 2005) (stating almost identical language regarding the inappropriate use of Rule 59). Rather, "'[t]he only grounds for granting [a Rule 59] motion are newly-discovered evidence or manifest errors of law or fact.'" *Arthur v. King*, 500 F.3d 1335, 1343 (11th Cir. 2007) (alteration in *Arthur*) (quoting *In re Kellogg*, 197 F.3d 1116, 1119 (11th Cir. 1999)). The decision whether to grant a Rule 59 motion is within the sound discretion of the district court and is subject to review for abuse of discretion. *Arthur,* 500 F.3d at 1343.

A.  *The Plaintiff has Failed to Convince this Court that a Manifest Error in Law Exists*

In the instant case, the Plaintiff requests relief under Rule 59(e) because of what she characterizes as an intervening change in the law based on two decisions: *Staub v. Proctor Hospital*, ___ U.S. ___, 131 S. Ct. 1186 (2011) and *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321 (11th Cir. 2011).  The Supreme Court entered the *Staub* ruling the same day as the hearing on the motion for summary judgment in this case, and the Eleventh Circuit issued the *Smith* opinion a few months after this court's order granting summary judgment.  The court will address whether either or both of these cases caused its ruling on the motion for summary judgment to be a "manifest error of law."

    1.  *Staub v. Proctor Hospital*

Unlike Burroughs's case, *Staub* is not a Title VII case, but it is an employment discrimination case; the plaintiff in that case brought suit for discrimination based on antimilitary animus under the Uniformed Services Employment and Reemployment Rights Act (USERRA).  The Plaintiff in the instant cases raises it, however, because of the "cat's paw" analysis in that case, and the court's holding that "if a supervisor performs an act motivated by [discriminatory] animus that is *intended* by the supervisor to cause an adverse employment action, and if that act is a proximate cause of the ultimate employment action, then the employer is liable. . . ."  *Staub,* 131 S. Ct. at 1194.  Thus, an employer can be liable under USERRA when the biased supervisor influenced, but did not make, the ultimate employment decision.

The court notes that, in the instant case, the only claim viable at the summary judgment

stage that implicated a cat's paw analysis was the discriminatory termination claim in Count I.[2]

The court's holding as to this claim was that the Plaintiff had not established her *prima facie* case. The following elements applied to establish a *prima facie* case on that claim:

> (1) she is a member of a protected class;
> (2) she was qualified for the job she held;
> (3) she suffered an adverse employment action; and
> (4) she was replaced by someone outside her protected class or was treated less favorably than a similarly situated individual outside the protected class.

*Maynard v. Bd. of Regents*, 342 F.3d 1281, 1289 (11th Cir. 2003)).

Although element four contains two options, the Plaintiff relied on the first option in framing her complaint and arguments on summary judgment. Both the Plaintiff and Defendant Bruister addressed only the first option in their briefs. (Bruister's Br., Doc. 127-1, at 13; Pl.'s Br., Doc. 138, at 20). Indeed, the Plaintiff's Third Amended Complaint traveled under the first option. In that pleading, the Plaintiff did not specify any white comparators as to this issue, and most tellingly, when she discussed the claim for discriminatory termination in her responsive brief, she simply stated that the Plaintiff "suffered an adverse employment action (termination); and was replaced by two white women, less qualified, and less experienced." Doc. 138, at 20.

---

[2] The court did not reach the merits of the retaliatory termination claim in Count I asserted against Bruister because it found the Plaintiff had not exhausted her administrative remedies as to that claim. As to the retaliatory termination claim in Count I asserted against DIRECTV, that claim was viable at the summary judgment stage, but court found that the Plaintiff had not raised a genuine issue of material fact in response to DIRECTV's evidence that it was not Plaintiff's employer and had nothing to do with the decision to terminate her. As to the retaliatory discrimination claim in Count I asserted against both Defendants based on post-termination adverse actions, the court did not reach the merits, but found that the Plaintiff had abandoned that claim by failing to address it in the retaliation section of her brief. The court's Memorandum Opinion addressing the motions summary judgment details the court's determinations of other claims that were no longer viable because of Plaintiff's failure to exhaust administrative remedies, time bar, or abandonment. Doc. 159.

As to the discriminatory termination claim, she did not argue in her brief she met the *prima facie* case by identifying a similarly situated white woman who was treated more favorably, i.e., not terminated.  The court found that the Plaintiff did not establish element four: that she was replaced by someone outside her protected class.  Rather, the evidence reflected that after Plaintiff's termination, a number of temporary workers[3] from a temporary employment service, both black and white, performed her job; and a that a black person named Faye was the first person subsequently employed full-time in that position.  The only evidence that Plaintiff pointed to that she was replaced by a white employee was co-worker Bembo's affidavit stating that some of those temporary workers were white.  The Plaintiff provided the court with no case law supporting her assertion that the existence of white temporary workers from a temp agency could establish element four of her *prima facie case,* particularly under the circumstances of this case, where the full-time worker eventually hired was black, where some of the temporary workers filling in were also black, and where no evidence existed that the employer—as opposed to the temp agency—chose which workers filled in temporarily.  Therefore, she did not establish her *prima facie* case on the discriminatory termination claim.

Given that she failed to establish a *prima facie* case, the Plaintiff's reliance on the new *Staub* case is misplaced. The cat's paw analysis comes into play *after* plaintiff establishes her *prima facie* case when rebutting as pretext the defendant's legitimate non-discriminatory reason for termination.  Because the Plaintiff did not establish her *prima facie* case, her discriminatory termination claim did not reach the cat's paw analysis, except to the extent that the analysis

---

[3] The temporary workers were: an unnamed white lady who stayed a day and a half; then Brittney (white); then Crystal (black); Toni (black); Alisha (black); Shelalah (black); and Shequita Matthews (black).  Bembo Aff.  Doc. 139-4, at 6, p. 5.

would apply to an alternative ruling.

In reviewing the transcript of the hearing on Defendants' motions for summary judgment, the court discovered that the post-hearing Order did not reflect its *alternative* ruling on the claim for retaliatory termination against Bruister, stated during the hearing.  *See* Hearing Transcript Doc. 164, at 44 & 57-58.  Thus, although the court ruled that the Plaintiff did not exhaust her administrative remedies as to that claim, the court now confirms its alternative ruling stated at the hearing and incorporated by reference into the Order:  that even if she had exhausted her remedies, her claim nevertheless fails because she failed to raise a genuine issue of material fact that Bruister's articulated legitimate non-discriminatory reasons for her termination—two separate acts of interference with a sexual harassment investigation—constituted a pretext for discrimination.  The court reiterates that the *Staub* case would not affect the court's ruling on the Plaintiff's retaliatory termination claim against Bruister, because its ruling was based on her failure to exhaust her remedies, and only the alternative ruling would implicate a cat's paw analysis.

In sum, any change in the cat's paw analysis emanating from the *Staub* case would not affect the court's rulings on discriminatory termination or retaliatory termination and cause those rulings to be a "manifest error of law."

The court notes, however, that the *Staub* opinion also would not change its *alternative* rulings on Count I discrimination claims.  *Staub* states that the employer would not be liable "if the employer's investigation results in an adverse action for reasons unrelated to the supervisor's original biased action. . . ." 131 S. Ct. at 1193.  In the instant case, Bruister listed two causes of the Plaintiff's termination—two separate instances where Burroughs interfered with the Guffy

investigation. The first, her "heads up" call to Guffy, had no relation to Hill's allegedly racially biased actions. Because the Plaintiff must address head-on *each* reason for her termination, which she did not do, *see Crawford v. City of Fairburn,* 482 F.3d 1305, 1308 (11th Cir. 2007), and because the reason based on her call to Guffy was unrelated to Hill and, thus, could not have been tainted by Hill's alleged animus, the opinion in *Staub* would not affect the court's alternative rulings as to the Count I discrimination claims.

### 2. Smith v. Lockheed-Martin Corp

The *Smith v. Lockheed-Martin Corp.* case, another recent Eleventh Circuit case addressing employment discrimination upon which the Plaintiff's motion now relies, also implicates only Count I claims. The Plaintiff asserts that, after *Smith,* she need not necessarily establish a *prima facie* case under the *McDonnell Douglas* framework to survive summary judgment on the discriminatory termination and retaliatory termination claims, but rather, can also defeat summary judgment if she presents circumstantial evidence that creates a triable issue concerning the employer's discriminatory intent.

Because of the court's rulings, referenced previously, on the retaliatory discharge claims, the court need not analyze how *Smith* affects them. However, the court's ruling on the discriminatory discharge claims as to Bruister—that Plaintiff did not establish a *prima facie* case—means that the court must address whether the Eleventh Circuit's opinion in *Smith,* when applied to this case and that claim, means the Plaintiff's claim nevertheless survives summary judgment. The Plaintiff asserts that *Smith* squarely impacts the instant claim, providing a means for the Plaintiff to obviate the *McDonnell Douglas* framework. The court finds that *Smith* requires no such result.

*Smith* does not herald the abandonment of *McDonnell Douglas's* burden-shifting framework.  Indeed, after *Smith*, the Eleventh Circuit has continued to apply that framework and affirm the grant of summary judgment when a plaintiff fails to establish a *prima facie* case.  *See, e.g., Jarvis v. Siemens Med. Solutions USA, Inc.,* Case No. 11-13467, 2012 WL 739490 (11th Cir. Mar. 8, 2012) (per curiam) (applying the *McDonnell Douglas* framework and affirming summary judgment because the plaintiff "failed to show that a reasonable factfinder could find all of [defendant's] legitimate, non-discriminatory reasons for his termination to be 'unworthy of credence' . . .[and] has not shown that [the comparator] was guilty of nearly identical misconduct but was disciplined differently.'"); *Maddox-Jones v. Bd. of Regents of Univ. Sys of Ga.,*  448 Fed. Appx 17, 20-21 (11th Cir. Nov. 22, 2011) (applying the *McDonnell Douglas* framework and affirming summary judgment in a race discrimination case where the plaintiff failed to show that persons outside her protected class were shown more favorable treatment, and thus, failed to establish her *prima facie* case under the framework); and *Edmond v. Univ. of Miami*, 441 Fed. Appx 721, 724 (11th Cir. Sept. 29, 2011) (referencing *Smith* but noting that the plaintiff did not argue that *Smith* was analogous*;* applying the *McDonnell Douglas* framework; and affirming summary judgment in a race discrimination case where the plaintiff failed to identify an appropriate, similarly situated individual to satisfy the fourth element of the framework).

*Smith* does allow a plaintiff to survive summary judgment even though he does not meet the *prima facie* case under the framework *if* he nevertheless "presents circumstantial evidence that creates a triable issue concerning the employer's discriminatory intent." *Smith*, 644 F.3d 1321.  The Court of Appeals explained that "[a] triable issue of fact exists if the record viewed in a light most favorable to the plaintiff, presents 'a convincing mosaic of circumstantial evidence

8

that would allow a jury to infer intentional discrimination by the decisionmaker.'" *Id.* (quoting *Silverman v. Bd. of Educ.*, 637 F.3d 729, 734 (7th Cir. 2011)). The plaintiff in that case, traveling under the second option for element four of his *prima facie* case, could not meet that *prima facie* case because he did not have an appropriate, similarly situated comparator who was a supervisor. The Court found, however, that he had presented a "convincing mosaic" of circumstantial evidence of discrimination sufficient to survive summary judgment, including a background of a racially-motivated mass shooting by an employee at the employer's plant; an investigative report by a national news organization accusing the employer of notice of the shooter's active racial animus at work and of failure to address it; multiple incidents of non-supervisory employees being disciplined differently despite engaging in nearly identical conduct; and documentation showing the employer explicitly considered race in the decision-making process that led to the plaintiff's termination. Thus, the Court of Appeals vacated and remanded the district court's opinion granting summary judgment. *Smith*, 644 F.3d at 1346-47.

In the instant case, the circumstantial evidence of discrimination is not analogous to that of *Smith*. The few pieces of evidence that the Plaintiff proffered to prove discrimination center around one employee, Hill, who was not the decisionmaker regarding the Plaintiff's termination, and who did not influence or otherwise taint one of the articulated legitimate, non-discriminatory reasons for the Plaintiff's discharge. Rather, that circumstantial evidence includes: Burroughs once overhearing Hill call her a "nigger bitch" and saying Burroughs was "going to get what she deserves;" Hill yelling in Burroughs's face on many occasions and causing errant spittle to land on her; Hill throwing papers at Burroughs and putting papers in her chair instead of talking to her; Hill refusing to stay at work after dark because she was fearful of walking to her car in an

all-black neighborhood after dark, saying things like "we know how you people are;" and Hill requiring Burroughs to change her own work schedule to accommodate that fear. (Doc. 125-4, at 23, p. 85; at 24, p. 89; at 27, p. 104; at 30, p. 144; at 28, p. 106-at 51, p. 199). Unlike *Smith,* the evidence here established no other instances when Bruister treated differently similarly situated employees of other races, and the evidence showed no documentation where Bruister considered race in the decision-making process about appropriate discipline. The circumstantial evidence in the instant case otherwise provided no pattern of *race*-based disciplinary decision-making that would establish a jury issue regarding whether the employment decision at issue was also based on discriminatory intent. Thus, the circumstantial evidence in this case creates no discernible pattern of discriminatory intent that would establish a jury issue under *Smith.* To borrow a clever phrase from a sister court examining the *Smith* case, the Plaintiff's evidence of in this case is "more than a few tiles short of a mosaic, let alone a convincing one." *See Alkhatib v. Steadman,* Case No. 10-342, 2011 WL 5553775, at *8 (S.D. Ala. Nov. 15, 2011).

The court finds that the circumstantial evidence submitted in support of the discriminatory termination claim does not create a triable jury issue concerning the employer's discriminatory intent under *Smith* and does not survive summary judgment. Thus, the Plaintiff has not convinced this court that the new cases of *Staub* and *Smith* render its rulings in the instant case to be "manifest errors of law."

      *B. The Plaintiff has Failed to Present Other Rule 59 Grounds*

Other than pointing to the new decisions of *Staub* and *Smith*, the Plaintiff does not identify particular "manifest errors of law or fact" to justify granting the Rule 59 motion. Instead, she attempts to do two things that are inappropriate at the Rule 59 stage: to rehash

arguments raised and litigated before as to claims against Defendants Bruister and Hill; and to raise matters that she *could have raised but failed to do so* as to claims against DIRECTV.

The court notes that Plaintiff's twenty-nine page motion filed pursuant to Rule 59(e) reads like a summary judgment responsive brief with a fact section in separate numbered paragraphs and citations to the record. To the extent that this motion represents a post-judgment attempt to supplement Plaintiff's briefs responding to the summary judgment motions of Bruister and Hill *or* to file—truly for the *first* time—a responsive brief to DIRECTV's dispositive motion, that attempt must fail. Rule 59 is not designed as a summary judgment do-over.

Neither is Rule 59 designed as means of circumventing court-ordered deadlines. The deadline to respond to Defendants' motions and briefs was October 7, 2010. The court will not completely restate its Order on Plaintiff's motion to strike (doc. 148) or its Order on Plaintiff's motion for leave to bring page references and citations to the court's attention (doc. 152) addressing this issue, but the court does reiterate that it granted Plaintiff two extensions of the deadline to respond to Defendants' summary judgment motions, totaling a generous twenty-three extra days. Even with those extensions, the Plaintiff failed to file *any* brief responding to DIRECTV[4], and one result of her failure to respond is that she admitted the facts set forth in DIRECTV's statement of facts. Instead of filing a responsive brief, the Plaintiff did file, a minute before the deadline expired, a motion to strike DIRECTV's motion for summary

---

[4] The court notes that even though Doc. 143 on the docket sheet purports to respond to Doc. 128, DIRECTV's motion for summary judgment, Doc. 143 is entitled "Plaintiff Lillie C. Burroughs' Memorandum Brief in Support of her Response in Opposition to Defendant *Mary Hill's* Motion for Summary Judgment" and addresses the state claims filed against Hill. Burroughs's only timely response to DIRECTV's motion for summary judgment was Doc. 146, a motion to strike DIRECTV's motion or, alternatively, a motion for protective order.

judgment. This court found no basis for that eleventh-hour motion and denied it, and similarly denied[5] Plaintiff's attempt to respond belatedly to DIRECTV's dispositive motion. If Plaintiff were not satisfied with her submissions—or her failure to file any submission as to DIRECT—she may not use a Rule 59 motion to fix her failures and obtain a second bite at the proverbial apple. Particularly egregious in her Rule 59 motion is the inclusion of facts with evidentiary citations related to the claims against DIRECTV and case law citations argument as to claims against DIRECTV. The court did not allow the Plaintiff to flout its deadline and belatedly file such information when she asked to do so after the deadline in October of 2010, and it will not allow her to do so now.

Treating the Rule 59 motion as a re-do of the summary judgment process or an opportunity to amend submissions after deadlines is violative not only of Rules 56 and 59 of the Rules of Civil Procedure but also of a number of this court's Orders, including not only the Orders referenced above but also the Initial Order (Doc. 19.IV.A); the Scheduling Order (Doc. 60, at 4 § III); Appendix II on the court's website to which the Scheduling Order refers (Requirements for Briefs, D.2.a., b.,&c.); and the Briefing Schedules on motions for summary judgment (doc. 129 & 130) amended by docket entry Orders dated September 10, 2010 and October 5, 2010. Therefore, the court *sua sponte* STRIKES the "Facts" section of the Plaintiff's Rule 59 motion from page two through the top of page nineteen. Further, the court, in its discretion, declines to re-address the remaining matters in the motion, matters either that were already addressed at summary judgment or that Plaintiff had an opportunity to raise and failed to

---

[5] The court also documented the Plaintiff's numerous other failures during the course of this litigation to respond timely to discovery matters and court deadlines. Doc. 152, at 2-3.

do so. The court celebrates zealous advocacy, but proper advocacy is not filing matters after deadlines when the court has specifically prohibited counsel from doing so and repeating arguments raised and decided.

In sum, the Plaintiff has failed to provide grounds for granting a Rule 59 motion; she has not presented newly-discovered evidence and has not convinced the court that its rulings granting Defendants' motions for summary judgment represent manifest errors of law or fact. For all the above reasons, the court, in its discretion, finds that the Plaintiff's motion to alter and amend as supplemented is due to be DENIED and the motions for a hearing are due to be DENIED.

## II. Motion for Costs

Having denied the Plaintiff's motion to alter and amend the court's order granting summary judgment, the Order granting summary judgment in the Defendants' favor stands, and the court next turns to the Defendants' motion for costs. Prevailing parties are entitled to an award of costs under Rule 54(d) of the Federal Rules of Civil Procedure; however, a court may only tax costs as authorized by statute. *U.S. E.E.O.C v. W&O, Inc.*, 213 F.3d 600, 620 (11th Cir. 2000). The awarding of costs in this case is governed by 28 U.S.C. § 1920, which provides in relevant part as follows:

> A judge or clerk of any court of the United States may tax as costs the following:
> (1) Fees of the clerk and marshal;
> (2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;
> (3) Fees and disbursements for printing and witnesses;
> (4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;
> (5) Docket fees under section 1923 of this title;
> (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special

interpretation services under section 1828 of this title.

The Plaintiff did not object to the motion for costs or to the bills of costs (docs. 162 & 163) that the Defendants subsequently filed.  The court has reviewed the motion, the case law cited in the motion, the cost bills with supplemental invoices, and the affidavit of Joshua S. Thompson.  It finds that the matters reflected in the cost bills fall within a category of taxable costs enumerated in 28 U.S.C. § 1920; that the depositions and costs incurred incident to the depositions' taking were reasonably necessary at the time they were taken; that the witness fee for Wanda Whatley is reasonable and appropriate; and that the photocopying costs listed were necessarily obtained for use in the case for discovery purposes, for provision to opposing counsel, to obtain Plaintiff's unemployment benefit record from the Alabama Department of Industrial Relations, to obtain Plaintiff's employment records from UAB, and to obtain Plaintiff's tax return documents from the Department of Treasury.

Finding that the Defendants are prevailing parties within the meaning of Rule 54(d) and that the Defendants are entitled to an award of the costs presented, the court GRANTS the motion for costs, and finds that Defendant Bruister is entitled to an award of costs from Plaintiff in the amount of **$5,281.75** and that Defendant DIRECTV is entitled to an award of costs from Plaintiff in the amount of **$2,549.62**.

The court will enter a separate Order consistent with this Memorandum Opinion.

Dated this 29th day of March, 2012.

_____
KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE